UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTONIO PIRTLE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 3:07-CV-499 RM |
| | ) |
| SUPERINTENDENT, INDIANA | ) |
| STATE PRISON, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Antonio Pirtle, a prisoner confined at the Indiana State Prison, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in Marion County for murder and attempted murder. On direct appeal, Mr. Pirtle argued that the trial court's denial of his motion to sever denied him a fair trial, that admission of his statements to the police violated his Fifth Amendment rights against self-incrimination, that his convictions for felony murder and attempted robbery violated the Double Jeopardy Clause of the Fifth Amendment, and that the evidence was insufficient to support his convictions for felony murder and attempted murder.

On November 7, 2005, the Indiana Court of Appeals found that Mr. Pirtle's felony murder and attempted robbery convictions violated double jeopardy principles, vacated the latter, and affirmed the convictions and sentences in all other respects. The Indiana Supreme Court denied transfer on January 4, 2006. In his petition for writ of habeas corpus, Mr. Pirtle contends that: (1) the trial court's denial of his motion to sever denied him a fair trial; (2) admission of his statements to police violated his Fifth Amendment rights against

self-incrimination; and (3) the evidence was insufficient to support his convictions.

The Indiana Court of Appeals set forth the facts regarding Mr. Pirtle's convictions as follows:

> In the early morning hours of February 14, 2003, Pirtle, Benjamin Adams (Adams), and Roger Scott (Scott) were at Adams and Pirtle's residence in Indianapolis drinking and playing cards whey they decided to walk to 61 North Keystone Avenue to visit a friend. On their way, the threesome encountered John Wright (Wright), and as Wright passed by the group, Adams punched him. Wright then ran away, but Pirtle, Adams, and Scott soon caught up with him in an alley where they punched and kicked him for two or three minutes. Scott then walked away, with Adams following behind him, while Pirtle stayed briefly, went through Wright's pockets and took a little change. As Pirtle walked away from Wright, Scott heard Pirtle say, "He doesn't have anything." (Transcript pp. 493-94). A few hours later, the police discovered Wright's dead body in the same alley where he had been attacked. An autopsy revealed that Wright died as a result of the injuries Pirtle, Adams, and Scott inflicted upon him.
>
> As Pirtle, Adams, and Scott continued walking toward 61 North Keystone Avenue, they encountered Daryl Garrett (Garret [sic]) whom supposedly owed Adams money. After a brief exchange about the debt, Adams threw a first punch at Garret [sic]. Soon, Pirtle and Scott entered the fight, punching and kicking Garret [sic] for several minutes. The attack ended after Adams hit Garret [sic] in the head with a brick two or three times. A witness to the attack on Garret [sic] called the police and described the attackers as three black men dressed in dark clothing. The police then found Garrett who was sent to the hospital where he spent two weeks recuperating from his injuries.
>
> As Sergeant Randall Staab (Sergeant Staab) of the Indianapolis Police Department (IPD) proceeded to the scene of Garret's [sic] attack, he observed three black males dressed in dark clothing walking down Beville Street just south of Michigan Street. Sergeant Staab reported this information, and subsequently Officer Daniel Smith (Officer Smith) located Pirtle, Adams, and Scott walking down the middle of Keystone Avenue. After following the three for a few minutes, Officer Smith stopped and exited his car, identified himself as a police officer, and ordered Pirtle, Adams, and Scott to stop. Scott obeyed the order, but Pirtle and Adams ran to and entered the residence located at 61 North Keystone Avenue.

> Shortly thereafter, several officers, including Sergeant Staab and Lieutenant Ted Fries (Lieutenant Fries), arrived and set up a perimeter around the residence to prevent anyone inside from leaving. Several attempts were then made by officers to contact the individuals who could be seen inside the home. Eventually, Althea Jackson (Jackson) let Sergeant Staab and Lieutenant Fries into the residence. A protective sweep of the home revealed five men, two of whom were Pirtle and Adams, two women, one of whom was Jackson, and two infants. Later, consent by Jackson to fully search the home led to the discovery by officers of blood in the bathroom sink and on the bathroom floor. Pirtle's and Adams' shoes were also found, both with blood on them, from which swabs were taken and submitted for DNA analysis. The DNA analysis revealed that the blood was that of Garret [sic].
>
> Adams and Pirtle were both arrested. Later that day, Pirtle gave a taped statement to the police, which incriminated himself and Scott. In this statement, Pirtle identified Scott as the main aggressor in the attack against Wright, but admitted that he was the one who went through Wright's pockets afterwards. In addition, Pirtle admitted in his statement that he "football tackled" Garret [sic] and hit him several times in the back. (Exhibit 53, p. 126).
>
> On February 18, 2003, the State filed an information charging Pirtle with the following: Counts I and II, murder (of Wright), pursuant to I.C. 35-42-1-1; Count III, attempted robbery (of Wright), a Class A felony, pursuant to I.C. 35-41-5-1, 35-42-5-1; Count IV, attempted murder (of Garret [sic]), a class A felony, pursuant to I.C. 35-41-5-1, 35-42-1-1; Count V, aggravated battery (of Garret [sic]), a class B felony, pursuant to I.C. 35-52-2-1.5; and Count VI, resisting law enforcement, a class A misdemeanor, pursuant to I.C. 35-44-3-3. Prior to his trial, Pirtle filed a Motion to Suppress Statements Made to Police, which was subsequently denied by the trial court on October 12, 2004. On October 18, 2004 through October 20, 2004, a jury trial was held in which Pirtle and Adams were tried together. Additionally, on October 18, 2004, before commencement of the trial, Pirtle renewed his Motion to Suppress Statements Made to Police; however, the trial court admitted the statements as evidence against Pirtle.

Pirtle v. State, Memorandum Opinion, Cause No. 49A02-0504-CR-326, slip op. 3-6 (Ind. Ct. App. 2005) (footnotes omitted) (Return, Ex. C.1).

In a habeas corpus proceeding, "a determination of a factual issue made by

a State court shall be presumed to be correct" unless the petitioner is able to rebut that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In evaluating a legal determination made by a State court, the:

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Brown v. Payton, 544 U.S. 133, 141 (2005) (citations omitted).

> For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision. We look for the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.

Yarborough v. Alvarado, 541 U.S. 652, 660-661 (2004) (quotation marks and citations omitted). Furthermore, district courts should not independently decide the merits of the petitioner's legal arguments.

> As we have explained, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a [United States] Supreme Court case incorrectly. Rather it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.

4

Price v. Vincent, 538 U.S. 634, 641 (2003) (quotation marks, citations and brackets omitted).

Mr. Pirtle made statements to the police when he was arrested. He asserts that the admission at trial of his taped statement, in which the officer taking the statement referred to statements Mr. Pirtle made in the "pre-interview," violated his Fifth Amendment right against compulsory self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966). The Indiana Court of Appeals concluded that Mr. Pirtle was fully informed of his Fifth Amendment rights and voluntarily waived them before making his taped statement to police. The Court of Appeals stated that:

> Our review of the record shows that Detective Mannina verbally read Pirtle his Miranda rights shortly after he was taken into custody. In addition, the record indicates that Detective Mannina gave Pirtle notice of his rights again in writing, directly from the written waiver form that he signed before making his recorded statements. A signed waiver form is indicative that Pirtle was aware of and understood his rights.

(Return, Ex. C at 11).

Mr. Pirtle suggests that he was tricked into incriminating himself before being advised of his Miranda rights when he made the taped statement because he made statements at the "pre-interview." Missouri v. Seibert, 542 U.S. 600 (2004), holds that post-warning statements are inadmissible if they duplicate pre-warning statements intentionally elicited in an effort to evade Miranda. The Indiana Court of Appeals reasonably rejected Mr. Pirtle's claim because the evidence established that Detective Mannina advised Mr. Pirtle of his rights when she first met him at the police station before the pre-interview. Mr. Pirtle agreed to talk with Detective Mannina, and she told him she would come back to speak with him later, because she wanted to interview Scott first (Tr.

5

861). When she returned, Officer Mannina gave Mr. Pirtle his <u>Miranda</u> warnings again as part of the taped interview.

The Indiana Court of Appeals correctly applied clearly established federal law in deciding that the trial court properly admitted Mr. Pirtle's statements to the police into evidence at trial. The Indiana Court of Appeals' judgment was entirely consistent with United States Supreme Court decisions on the question and could in no way be characterized as "contrary to" or an "unreasonable application" of that authority.

Mr. Pirtle next argues that he was denied fundamental due process and a fair trial in violation of the Constitution's Sixth and Fourteenth Amendments because the trial court denied his motion to sever the offenses for trial. The Indiana Court of Appeals expressly found that "[o]ur review of the record supports a finding that the beating death of Wright and the subsequent assault on Garret [sic] constituted one uninterrupted transaction, and as such we cannot find that Pirtle was prejudiced by the joinder of all his offenses into one trial." (Return, Ex. C at 8).

Mr. Pirtle assets in his habeas petition that the refusal to sever his trials violated provisions of the United States Constitution. But in his state appeal, Mr. Pirtle presented his severance argument exclusively as a trial court abuse of discretion under Indiana Code § 35-34-1-11 and Indiana jurisprudence interpreting that provision. (Return, Ex. D at 13-18). Because Mr. Pirtle presented no federal due process or Sixth Amendment claim to the state courts he is barred from presenting his severance claims to this court for habeas review.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a

> case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

Baldwin v. Reese, 541 U.S. 27, 32 (2004). Because Mr. Pirtle argued only Indiana law in challenging the trial court's order on his motion to sever, he may not present this issue now as a federal claim.

Finally, Mr. Pirtle asserts that there was insufficient evidence to support a finding of guilt on either conviction. The Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt. Fiore v. White, 531 U.S. 225, 227 (2001) (citing Jackson v. Virginia, 443 U.S. 307, 316 (1979). The relevant inquiry for a federal habeas court reviewing a sufficiency of evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 319; Brumley v. Detella, 83 F.3d 856, 862 (7th Cir. 1996). Under Jackson, a petitioner is only "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Cabrera v. Hinsley, 324 F.3d 527, 533 (7th Cir. 2003) (citing Jackson, 443 U.S. at 324).

Mr. Pirtle argues that the State didn't prove that he intended to rob Mr. Wright in support of the felony murder charge. The Indiana Court of Appeals concluded that "[i]t is clear that Pirtle knowingly attempted to take property from Wright. In his own statements to police, Pirtle admitted to delving into Wright's pockets only to find a little change." (Return, Ex. C at 13). The court of appeals also observed that Mr. Scott testified

that Mr. Pirtle said Mr. Wright "doesn't have anything," as he and Mr. Adams were walking away from Mr. Wright's body. *Id.* at 13-14. Based on that evidence, the Indiana Court of Appeals found it was a reasonable inference that the use of force against Mr. Wright was either in an attempt to rob him, or that it facilitated an attempt to rob him. *Id.* at 14.

As to the attempted murder of Mr. Garrett, Mr. Pirtle argues essentially that because it was Mr. Adams that struck Mr. Garrett with the brick, the evidence didn't show that Mr. Pirtle had any intent to kill Mr. Garrett. The Indiana Court of Appeals correctly noted that under Indiana law culpability as an accomplice in an attempted murder charge requires proof that the defendant acted with the specific intent to kill, and that he engaged in conduct constituting a substantial step toward the killing of another human being. (Return, Ex. C at 15, citing Hawkins v. State, 794 N.E.2d 1158, 1164 (Ind. Ct. App. 2003)). Further, "'intent to kill may be inferred from the nature of the attack and the circumstances surrounding the crime,' as well as from the duration or brutality of the attack." (Return, Ex. C at 15) (quoting Gall v. State, 811 N.E.2d 443, 450 (Ind. Ct. App. 2004); and citing Alexander v. State, 819 N.E.2d 533, 541 (Ind. Ct. App. 2004)). The Court of Appeals noted that Mr. Pirtle tackled Mr. Garrett to the ground and hit him in the back several times, participating in the brutal and sustained attack that culminated in Mr. Adams delivering multiple blows with a brick. (Return, Ex. C at 15). Based on this evidence, any rational trier of fact could have found the essential elements of attempted murder beyond a reasonable doubt. The Indiana Court of Appeals reasonably concluded that the evidence was sufficient to support Mr. Pirtle's convictions for felony murder and attempted murder, and he falls

far short of the showing required by Jackson necessary to succeed on habeas review.

For the foregoing reasons, the court DENIES this petition for writ of habeas corpus.

SO ORDERED.

DATED: February  17 , 2009

                                        /s/ Robert L. Miller, Jr.
                                       Chief Judge
                                       United States District Court